UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| Brokers, Inc. | ) Case No. 04-53451 |
| | ) |
| Debtor. | ) |
| | ) |

## ORDER AND OPINION APPROVING IN PART BRANCH BANKING AND TRUST'S APPLICATION FOR SECTION 506(b) FEES AND EXPENSES

This matter came on for hearing before the court on August 31, 2005 upon the Application by Branch Banking and Trust for allowance of § 506(b) Fees and Expenses (the "Application"). June L. Basden appeared on behalf of Branch Banking and Trust ("BB&T"), Christine L. Myatt appeared on behalf of the Debtor, C. Edwin Allman III appeared on behalf of the Official Committee of Unsecured Creditors, and Michael D. West appeared as the Bankruptcy Administrator. The court, having considered the Application and all pleadings before it, finds that:

On November 22, 2004, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Since the Petition Date, the Debtor has continued to operate its business and manage its assets as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

BB&T's claim for attorneys' fees and expenses arise out of a Promissory Note dated March 26, 1997 in the original principal amount of $3,300,000.00. The Promissory Note is secured by a Deed of Trust on real property generally known as the "Eastgate Property" and located at 300-314 Ardale Road in High Point, North Carolina. The Eastgate Property consists of 96 apartments, a clubhouse, and pool. On Schedule A of its petition, the Debtor listed the

Eastgate Property as having an appraised value of $4,000,000.00 and being subject to the secured claim of BB&T in the amount of $2,739,375.96. The Debtor listed total assets valued at $19,146,207.00 and liabilities in the amount of $9,327,663.85. From the inception of the bankruptcy proceeding, all parties agreed that BB&T's secured claim was protected by a significant equity cushion and that all claims would be paid in full.

On March 10, 2005, the Debtor filed a motion to sell the Eastgate Property to the Emmanuel Project for the sum of $4,000,000.00. On that same date, BB&T filed an application for 506(b) fees and expenses. On March 11, 2005, the Debtor withdrew the motion for sale, and on March 15, 2005, BB&T withdrew its application for 506(b) fees and expenses.

On May 5, 2005, the Debtor entered into a second contract to sell the Eastgate Property for $3,200,000.00, a purchase price almost $500,000.00 more than BB&T's secured claim on the property. The description of services rendered, attached to the Application, indicates that counsel for BB&T forwarded an engagement letter requesting the appraisal for the Eastgate Property on May 13, 2005. The fee for the appraisal was $2,500.00. On May 18, 2005, the Debtor filed its second motion to sell the Eastgate Property for $3,200,000.00, and that sale was approved on June 15, 2005.

Counsel for BB&T filed the Application on July 15, 2005 seeking $13,766.12, including attorneys' fees in the amount of $11,167.50 and expenses in the amount of $2,598.62. The Bankruptcy Administrator filed an objection to the Application on the basis that the paralegal rates were too high, the application contained estimated fees, and that attorneys performed more work than necessary in this case given that there was never any doubt that BB&T was over secured. The Bankruptcy Administrator requested that the estimated fees be deleted, the

2

paralegal rates be reduced, and that the total computed fee be reduced by 20%. The Bankruptcy Administrator recommended that total fees and expenses be reduced to $10,749.02. Counsel for the Debtor supported the fee application. Counsel for the Official Committee of Unsecured Creditors adopted the position of the Bankruptcy Administrator.

Section 506(b) provides:
> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C.§ 506(b). Accordingly, to sustain a claim for fees pursuant to § 506(b), a creditor must demonstrate four criteria: (a) the creditor holds an allowed claim; (b) the creditor is over secured; (c) the underlying agreement provides for such fees and costs; and (d) the fees and costs are reasonable. In this case, there is no dispute that the creditor is over secured or that the underlying agreement provides for such fees and expenses. Additionally, § 506(b) is a reimbursement statute. There is no dispute that BB&T has paid the fees and expenses incurred. The only issue is whether the requested fees and expenses are reasonable.

Section 506(b) preempts state law governing the payment of reasonable attorney fees[1] and establishes a federal right to reasonable attorney fees irrespective of state law. In re Ward, 190 B.R. 242, 245 (Bankr. D. Md. 1995). In determining whether fees and expenses are in fact reasonable, the court should consider whether the actions taken were reasonable under the circumstances, and if so, whether the amount of the fees and expenses are reasonable for the type

---

[1] Counsel for BB&T argued that under North Carolina law, BB&T would be entitled to 15% of the outstanding balance of the loan, and that this request was for less than 1%.

of actions taken. In re Valdez, 324 B.R. 296, 300 (Bankr. S.D. Tex. 2005); In re Cushard, 235 B.R. 902 (Bankr. W.D. Mo. 1999). "Creditor's counsel does not have a blank check for automatic payment of fees and reimbursement of expenses." In re Ward, 190 B.R. at 245 (citations omitted). Reasonable fees and expenses include those fees and expenses which are necessary for the collection and protection of a secured creditor's claim or interest Id. The secured creditor seeking payment has the ultimate burden of proof to show reasonableness. In re Dixon, 228 B.R. 166, 178 (W.D. Va. 1998). The allowance of attorneys' fees is within the discretion of the bankruptcy court, which has knowledge of the facts and circumstances of the case, the efforts expended, and the value of the services rendered. Id.

In this case, the court finds that not all of the actions undertaken by BB&T were reasonable because they were not all prudent or necessary for the collection or protection of BB&T's claim. Specifically, BB&T engaged an appraiser for the Eastgate Property on or about May 13, 2005 and incurred an appraisal fee on June 3, 2005 in the amount of $2,500.00. BB&T ordered this appraisal despite the fact that all parties agreed that there was a substantial equity cushion (so much so, that BB&T had already filed one application for § 506(b) fees and expenses) and that the Debtor had entered into a contract to sell the Eastgate Property for $3,200,000.00 on May 5, 2005. Counsel for BB&T contends that this appraisal was necessary because the Debtor's appraisal was "older" and BB&T had nothing in its file to show that it was over secured. Counsel for BB&T further contends that the appraisal was necessary to protect BB&T's interest in the event the property did not sell or the case was converted.[2]

---

[2] A motion to dismiss or convert the case was filed by the Bankruptcy Administrator on March 7, 2005. The hearing on this motion has been continued several times and is currently set to be heard on October 19, 2005.

4

The court finds that BB&T has not sufficiently demonstrated that the fees and expenses associated with the appraisal were necessary for the collection or protection of BB&T's claim. Given the large equity cushion and the amount of other unencumbered assets in this case, it was not necessary or prudent that BB&T incur these significant fees and expenses at the point in the case in which it did. Because the appraisal was not a reasonable action, all fees and expenses associated with the appraisal shall be disallowed. See In re Valdez, 324 B.R. 296 (it was not prudent for an over secured creditor to seek relief from stay and creditor may not recover costs of such motion); In re Cushard, 235 B.R. 902 (Bankr. W.D. Mo. 1999) (fees related to over secured creditor's unreasonable objection to debtor's use of cash collateral disallowed).

Upon a review of the description of services rendered included in the Application, it appears that the applicant expended 3.0 hours providing services related to the appraisal at a rate of $295.00 per hour; therefore, the court will deduct $1,185.00 from the requested fees. In addition, the $2,500.00 appraisal fee shall be disallowed. The court finds that the remainder of the fees and expenses requested by BB&T were reasonable and necessary.

Based upon the foregoing, it is ORDERED that the Application of BB&T for § 506(b) fees and expenses is allowed in the amount of $10,081.12, including $9,982.50 for attorneys' fees and $98.62 for expenses.

PARTIES TO BE SERVED
04-53451 C-11

June L. Basden
P.O. Box 540
Greensboro, NC 27402

C. Edwin Allman
P.O. Drawer 5129
Winston-Salem, NC 27113-5129

Carlton Eugene Anderson
c/o Tom Wright
3001 Meridian Ave.
High Point, NC 27260

J. David Yarbrough
Nexsen Pruet Adams Kleemeier
P.O. Box 3463
Greensboro, NC 27402

Michael D. West
P.O. Box 1828
Greensboro, NC 27402